FOX v. CAMERON COUNTY. (No. 7004.)*

(Court of Civil Appeals of Texas. San Antonio. Oct. 24, 1923. On Appellee's Motion for Rehearing, Nov. 14, 1923. On Appellant's Motion for Rehearing, Jan. 9, 1924. Further Rehearing Denied Jan. 30, 1924.)

1. Taxation ⬅549(1)—Including drainage district values in total taxable values upon which right to allow premium on bond depended held not unauthorized.

The authority of the commissioners' court to allow the tax collector premium paid on his bond is based on total taxable valuation under Rev. St. art. 7610, as amended by Acts 35th Leg. (1917) c. 146 (Vernon's Ann. Civ. St. Supp. 1918, art. 7610), and in fixing such values it was not beyond the power of that court to include taxable values of drainage districts within the county.

2. Counties ⬅206(1)—Judgment of commissioners' court allowing premium on collector's bond not collaterally attacked.

Where, in allowing claim for premium on collector's bond under Rev. St. art. 7610, as amended by Acts 35th Leg. (1917) c. 146 (Vernon's Ann. Civ. St. Supp. 1918, art. 7610), the county commissioners' court included, in the total taxable values, the taxable values of drainage districts, its act cannot be questioned by collateral attack.

3. Courts ⬅2—Jurisdiction not dependent on correctness of rulings.

Jurisdiction of a court does not depend on correctness of its rulings.

On Appellant's Motion for Rehearing.

4. Counties ⬅205(1)—Certiorari proper proceeding to question judgment of commissioners' court.

Contest of action of commissioners' court, in allowing claim for premium on collector's bond under Rev. St. art. 7610 as amended by Acts 35th Leg. (1917) c. 146 (Vernon's Ann. Civ. St. Supp. 1918, art. 7610), in including in total taxable values of the county taxable values of drainage districts, should have been under Const. art. 5, § 8, by certiorari to the district court, where judgment of the commissioners' court could have been questioned.

Appeal from District Court, Cameron County; W. B. Hopkins, Judge.

Action by Cameron County against J. J. Fox. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Seabury, George & Taylor and R. A. Hightower, all of Brownsville, for appellant.

Spears & Montgomery, of San Benito, and Graham, Jones, Williams & Ransome, of Brownsville, for appellee.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted March 12, 1924.

COBBS, J. This suit is by Cameron County, appellee, to recover from appellant, J. J. Fox, the sum of $650 alleged to have been unlawfully and illegally paid to him, as tax collector, representing the premium paid on two official bonds of appellant with a surety company, one for $63,000 and one for $100,000. The case was tried before the court without a jury.

It is conceded that this appellant duly presented the claim for said sum of money to the commissioners' court of Cameron county, sitting as a court duly in its regular term time, having full knowledge of all the facts adjudged the law in favor of appellant on the justness and validity of the claim, and caused a voucher or warrant to issue to appellant for $650 payable out of the general fund in satisfaction thereof, and the money was duly paid and received thereon by appellant. It was shown on the trial of this case that the taxable values assessed for state and county purposes were $23,606,240; taxable values on supplemental rolls, $330,900; taxable values in two drainage districts, $6,182,800; total, $30,119,940.

The main issue, narrowed down, is whether or not, in passing upon or allowing the claim, the commissioners' court could only consider the tax values assessed for state and county purposes, and could not consider the taxable values in the two drainage districts. If the court had the power to consider the last-named item in making up its judgment that would bring the values up to $30,000,000 or more, and by virtue of article 7610, R. S., as amended by chapter 146 of the Acts of the Thirty-Fifth Legislature (Vernon's Ann. Civ. St. Supp. 1918, art. 7610), it would be within the plain powers of the court to allow the claim.

[1] The important question arises: Did the commissioners' court exceed its authority in considering the item of drainage district taxable values, in their calculation of total values, in respect to the whole matter.

The language of the statute provides as follows:

"In the event the bonds required under the terms of this article and also under article 7608 or either thereof, and executed by a satisfactory surety company or companies or by any private party or parties as surety or sureties thereon in counties with a total taxable valuation of thirty million ($30,000,000) dollars or more, the county of which the principal in said bonds is tax collector shall pay a reasonable amount as premium on said bond or bonds which amount shall be paid out of the general revenue of the county upon presentation of the bill therefor to the commissioners' court of the county properly authenticated as required by law in other claims against the county, and should there be any controversy as to the reasonableness of the amount claimed, as such premium, such controversy may be determined by any court of competent jurisdiction. (Act Aug. 21, 1876, p. 260, § 4; Act March 22,

1915, c. 124, § 1; Act March 30, 1917, c. 146, § 1.)"

We find no good reason why, in fixing the total taxable valuation, the commissioners' court were not allowed to take into account the taxable values in the drainage districts. Such values were noted when the penalty of the bonds were required to be named, for which amount he was liable and for which he and his sureties were bonded.

We are not willing to adopt the view of appellee that, because the bonds provided for, in article 7608, required them payable to the Governor and his successors in office, based on the amount of state tax of the county and the bond required under article 7610 payable to the county judge, based on the county tax, denies relief to the tax collector, who does give the bond based here upon the total taxable valuation of thirty million or more. The authority of the commissioners' court to allow the collector is not based upon the assessable values for state or county purposes, but upon the "total taxable valuation of $30,000,000."

[2] This very statute provides a remedy for the settlement of any controversy or dispute. It provides that "such controversy may be determined by any court of competent jurisdiction," which controversy must arise at the time of the allowance; but there seems to have been no controversy that took place then. It is admitted that the claim was honestly submitted and well understood by the court, and duly allowed, and became the final judgment that was pronounced upon it, upon which the warrant was issued and duly paid. Now, after the lapse of that time, the same county brings this suit, charging that its prior acts were void, and seeking to recover the money paid on it. Aside from the validity of the claim the acts of that court should not now be called in question and collaterally attacked.

If a suit had been timely brought to test the question upon a controversy that arose, at the time, on the claim, a serious question might have been raised as to whether the court could consider the taxable values of the drainage district in making up its judgment, and even then it would have been a question of construction for the court. If the court merely erred in its construction and the ruling, its acts might have been regarded as voidable; in other words, erroneous. But here we have a positive adjudication of the issue of fact and law by a court of competent jurisdiction. It was admitted:

"It was agreed between counsel for appellant and appellee, in open court that the premiums on appellant's bonds as tax collector for the year 1920 was $650, and that voucher was issued to him for that amount by order of the commissioners' court. It was further agreed that the total valuation of the properties of the county in the two school districts at that time

was over $30,000,000, and that the commissioners' court knew of said valuations. It was further admitted that the claim for $650 to pay premiums on said bonds was filed, audited, approved by the county auditor, and ordered paid, and voucher was issued by the commissioners' court, and that at the time of the presentation of said claim as audited and approved by the county auditor, with his stamp of approval thereon, the commissioners' court knew of the purpose for which claim was presented and the party to whom it was payable, and the commissioners' court believed they had the lawful right to pay it. It was further admitted that the commissioners' court, in approving and ordering paid the claim in question, was sitting in regular session."

[3] It is too plain for argument that the judgment of the commissioners' court, when passing upon claims, acting within the scope of its authority, is valid and binding and as free from collateral attack as the judgment of any other court of record. Nor does the jurisdiction of any court depend upon the correctness of its ruling. It is clear that, if the statute was such as to prohibit the commissioners' court from considering the item of $6,182,800 as the taxable values in the two drainage districts, it would reduce the taxable values for state and county purposes to $23,937,140, which would be less than the statutory $30,000,000 necessary to predicate the allowance, and the action of the court would clearly be void, and subject to collateral attack. McKinney v. Robinson, 84 Tex. 489, 19 S. W. 699; McDonald v. Farmer, 23 Tex. Civ. App. 39, 56 S. W. 555; Slaughter v. Knight (Tex. Civ. App.) 184 S. W. 539; Tarrant County v. Rogers (Tex. Civ. App.) 125 S. W. 592; Noel v. City of San Antonio, 11 Tex. Civ. App. 580, 33 S. W. 263; Stratton v. Commissioners' Courts (Tex. Civ. App.) 137 S. W. 1170; Limestone County v. Knox (Tex. Civ. App.) 234 S. W. 131.

The commissioners' court determined the question of fact, as it was its duty to do, for the purpose of fixing the appellant's bond, and found in good faith the taxable values at $30,000,000, and required appellant to give the bond upon the basis of $100,000. We are now requested to hold that the action of that court in this collateral proceeding was void on the sole ground that the commissioners' court had no power to so make and estimate the taxable values of the county so as to include the drainage districts for the purpose of the allowance. The amount of bond which appellant was required to give was based upon that estimate. The fixing of such bonds is largely within the discretion of the commissioners' courts. What statute prevented the commissioners' court from considering the taxable values of the drainage districts, either separately or inclusively, in making the total estimate of taxable values necessary to require the proper bond, is not shown. Such acts are not ordinarily subject to collateral attacks. 15 C. J. 469 to 475, inclusive; 15 C.

J. 515 to 517, inclusive; Callaghan v. Salliway, 5 Tex. Civ. App. 239, 23 S. W. 837; Polk v. Roebuck (Tex. Civ. App.) 184 S. W. 513; Jeff Davis County v. Davis (Tex. Civ. App.) 192 S. W. 295; Padgett v. Young County (Tex. Civ. App.) 204 S. W. 1052; August A. Busch & Co. v. Caufield (Tex. Civ. App.) 135 S. W. 245; 7 American-English Encyc. 1003; Vogt v. Bexar County, 16 Tex. Civ. App. 567, 42 S. W. 127.

In passing upon an order made by the commissioners' court of Bexar county, auditing a claim, the late Mr. Justice Neill in handing down the opinion of this court in Callaghan v. Salliway, supra, said:

"By article 1514, Rev. [Civ.] St., county commissioners' courts are given the power to audit and settle all accounts against the county and direct their payment. This power of the court was invoked by the appellee on his claim, and the court, in the exercise of it, made the order allowing it referred to in our findings of fact. The effect of this order is a judgment having all the incidents and properties attached to a similar judgment pronounced by any regularly created court of limited jurisdiction, acting within the bounds of its authority; and the action of the court on the claim is res adjudicata, and is as conclusive of the county's liability as though the adjudication had been made by a court of general jurisdiction. 2 Freem. Judgm. § 531. By article 5, § 8, of our Constitution, it is provided that the district court shall have appellate jurisdiction and general supervisory control over the county commissioners' court, with such exceptions as may be prescribed by law. To set aside or avoid the effect of an order of the county commissioners' court auditing and allowing a claim against a county, this jurisdiction of the district court must be invoked in the proper manner, by an appropriate proceeding; and until it is done, the action of the county court must stand as a judgment, and cannot be collaterally attacked by the district or any other court."

The commissioners' court required appellant to give a bond in the sum of $100,000. If appellee's construction be the correct one, then, as a matter of law, on the basis of that estimate, the bond should have been for 40 per cent. of the taxes, which would have required a bond for less than $100,000. It is therefore obvious that the bond required was to protect the state and county taxes, as well as the various drainage district taxes collected by appellant. Under the circumstances we do not think the county is in a position to "back-fire," so to speak, on its previous holding, or repudiate its acts done within the scope of its powers erroneously exercised, or to reverse its rulings long afterwards, so as to say, in fixing the bond, that the valuation of the taxable values of Cameron county for the year 1920 should not include the two drainage districts situated in that county. 21 C. J. 1226 to 1228; Northington v. Taylor County (Tex. Civ. App.) 62 S. W. 936. It was the intention of the Legislature, under ar-

ticle 7610, R. S., to vest discretionary power in the commissioners' court for auditing, adjusting, directing, and ordering a reasonable amount to be paid by the county as a premium on appellant's bond as tax collector for the year 1920.

It may be that the proper construction to be placed on the statute in question is doubtful; but in this matter the commissioners' court has finally passed its judgment, upon which both parties acted, and no appeal to any other court, taken as allowed by the statute, providing therefor, as shown, should now be entertained in this collateral proceeding. Courts, when called upon in a collateral attack to review the action of other courts, whose duty it was to apply the statutory laws of the state, will hesitate long before refusing to follow the construction placed thereon, unless it be shown to be clearly void, not merely voidable.

For the reasons given we believe the court erred in its judgment; and the judgment of the trial court is reversed, and judgment here now rendered, that the appellee take nothing by its suit.

### On Appellee's Motion for Rehearing.

The basis for fixing the amount of the bonds in question must be the total taxable value of the county. The commissioners' court had no authority to add to the total taxable values of the county the drainage district taxes, for that would be creating a double value in conflict with the statute; in other words, was adding a fictitious value to the taxable values of the county, thus exceeding the authority of the commissioners' court.

We were also in error in holding that because the commissioners' court exercised its judicial functions and entered a judgment thereon, it is not subject to collateral attack. The act of the court in this matter was in the very teeth of the statute, beyond its authority, and therefore void.

For the reasons given, the motion for rehearing is granted, and the judgment of the trial court is affirmed.

### On Appellant's Motion for Rehearing.

Considering appellant's motion for a rehearing, we have carefully gone over the whole case again, and have convinced ourselves that we were right in our original opinion delivered herein, and wrong in granting a rehearing to appellee and affirming the judgment.

As held by us in our original opinion, it was a collateral attack upon the judgment of the commissioners' court, who, under the Constitution, were alone charged with the power and authority to pass upon such claims. See opinion of this court in City of Brownsville v. Basse, 43 Tex. 440–449; Constitution of Texas, art. 5, §§ 1–18; article

2241, c. 2, tit. 40, Vernon's Sayles' Tex. Civ. Stats. 1914; Acts 1917, c. 146, § 1 (Vernon's Ann. Civ. St. Supp. 1918, arts. 7610, 7610a, 7619b).

[4] The contest, if any, by the county should have been made under the provisions of section 8, art. 5, of the Constitution, when the district court had appellate jurisdiction, which could have been done by certiorari proceedings. County Judge v. Salliway, 5 Tex. Civ. App. 239, 23 S. W. 837; Aug. A. Busch & Co. v. Caufield (Tex. Civ. App.) 135 S. W. 244. In such proceeding only could the judgment of the commissioners' court be questioned. Brockenborough and Wife v. Melton, 55 Tex. 493, 503; Hearn v. Camp, 18 Tex. 545.

The motion granted by this court affirming the judgment on the 15th day of November, 1923, is set aside, and the opinion withdrawn, and the motion for rehearing filed by appellant is now granted.

The judgment and opinion of this court reversing and rendering judgment in favor of James J. Fox, appellant, is reinstated, and here now entered as the judgment of the court.

Reversed and rendered.